IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01007-PAB-SKC

CANIDAE, LLC, a Delaware limited liability company,

 Plaintiff,

v.

DEREK WESTENDORF, an individual,

 Defendant.

---

# ORDER

---

This matter is before the Court on Defendant's Motion to Dismiss Complaint [Docket No. 12]. Plaintiff responded. Docket No. 17. Defendant did not reply.

## I. BACKGROUND[1]

Plaintiff hired defendant as a Territory Sales Representative in July 2017 and promoted defendant to Midwest District Sales Manager, based out of Colorado, in December 2018. Docket No. 1 at 2, ¶¶ 11–12. In February 2020, defendant signed a "Proprietary Information, Invention Assignment and Noncompetition Agreement" ("Agreement") with plaintiff in which defendant

> acknowledge[d] that . . . [he] will have access to Confidential Information, . . . made accessible to [him] only in strict confidence; that unauthorized disclosure of Confidential Information will damage the Company Parties; and that the restrictions contained in [the Agreement] are reasonable and necessary for the protection of the Company Parties' legitimate interests.

---

[1] The following facts, which are assumed to be true, *see Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011), are taken from plaintiff's complaint [Docket No. 1].

*Id.* at 2–3, ¶¶ 13–14.  Defendant also agreed not to disclose any confidential information "in writing, orally, electronically, digitally, via the world wide web, via social media, via the Internet or in any other form or manner, without written authorization of an authorized officer of the Company."  *Id.* at 3, ¶ 15.  The Agreement defines "confidential information" as "any non-public information that relates to the actual or anticipated business or research and development of the Company."  *Id.*, ¶ 16.

Defendant agreed that, during his employment and for one year thereafter, he would not "directly or indirectly . . . hire, solicit, recruit, encourage or influence, or attempt to hire, solicit, recruit, encourage or influence any employee, independent contractor or consultant of the Company away from the Company or to terminate or reduce such Person's engagement with the Company," regardless of who initiates the contact.  *Id.* at 4, ¶ 18.  Defendant agreed that he would not directly or indirectly "solicit the business of, take away, divert, or accept business, or attempt to solicit, take away, divert or accept business from any client, customer, contractor, supplier, partner or other Person having a business relationship with the Company" and would not, directly or indirectly, "solicit, induce, encourage, influence, or persuade, or attempt to solicit, induce, encourage, influence, or persuade any client, customer, contractor, supplier, partner," or anyone else in business with plaintiff, "to reduce or terminate such Person's relationship with the Company or otherwise interfere with any of the Company's economic relationships."  *Id.*, ¶ 19.

Defendant acknowledged that his compliance was necessary to protect plaintiff's

trade secrets, value, and goodwill, that "time, geographic and scope limitations" of defendant's obligations under the Agreement were reasonable, and that the Agreement would not prevent him from obtaining gainful employment. *Id.* at 4–5, ¶¶ 20–21.

When defendant was hired, he signed a "Conditional Offer of Employment," and, when he was promoted, he signed an "Offer of Promotion," agreeing that, during his employment and for one year thereafter, he would not "directly or indirectly solicit or encourage any employee, agent, independent contractor, supplier, customer, consultant or any other person or company to terminate or alter a relationship with [plaintiff]." *Id.* at 5–6, ¶¶ 24–25.

On or around December 4, 2020, defendant voluntarily terminated his employment with plaintiff. *Id.* at 6, ¶ 28. He then made several posts on employment-related websites that divulged confidential information about plaintiff's financial goals and achievements and disparaged plaintiff and its executives in order to solicit, encourage, or influence plaintiff's employees, independent contractors, customers, or others to "terminate, diminish, or alter their relationship" with plaintiff. *Id.*, ¶¶ 29–31.

Plaintiff brings eight claims for relief: (1) breach of the Agreement's confidentiality clause; (2) breach of the Agreement's nonsolicitation clause; (3) breach of the Agreement's implied covenant of good faith and fair dealing; (4) breach of the "Offer of Employment/Promotion"; (5) breach of the implied covenant of good faith and fair dealing in the "Offer of Employment/Promotion"; (6) defamation; (7) intentional interference with prospective economic relations; (8) injunctive relief. *Id.*, at 8–16, ¶¶ 36–99.

## II.  LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction.  A plaintiff bears the burden of establishing that the Court has jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1).  *See Jackson v. City and Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556 at *1 (D. Colo. Sept. 24, 2012).  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).  A court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment.  *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

In reviewing a motion to dismiss for improper venue pursuant to Rule 12(b)(3), "[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits.  A district court may examine facts outside the complaint to determine whether its venue is proper." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1260–61 (10th Cir. 2012) (quoting 5B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1352 (3d ed. 2015)).  "[T]he court

must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* at 1261 (citation omitted).

## III. ANALYSIS

Defendant moves to dismiss plaintiff's complaint on two grounds. First, defendant argues that venue and jurisdiction are not proper in this Court under the Agreement's choice-of-law and forum-selection clause (collectively, "Section 10(a)"). Docket No. 12 at 3–4. Second, defendant argues that plaintiff cannot meet the amount-in-controversy jurisdictional requirement. *Id.* at 4–5.

### A. Venue and Jurisdiction

Defendant argues that venue is not proper in this Court due to Section 10(a) of the Agreement, which states, in relevant part:

> 10. General Provisions.
>     (a) Governing Law; Consent to Personal Jurisdiction. This Agreement will be governed by the laws of the State of Delaware without regard for conflicts of laws principles. I hereby expressly and irrevocably consent to the exclusive personal jurisdiction of the state and federal courts located in Wilmington, Delaware for any lawsuit filed there against me by the Company arising from or relating to this Agreement, except that I recognize the Company reserves the right to seek preliminary or injunctive relief (such as a temporary restraining order or preliminary injunction) in any jurisdiction in which I live or work at the time of a breach or threatened breach of this Agreement.

Docket No. 1-1 at 8.[2] Defendant states that "[e]ach and every one of [plaintiff's]

---

[2] The Court takes judicial notice of the Agreement, which both parties refer to and rely on. *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (on a motion to dismiss, courts may consider "a document central to the plaintiff's claim and referred to in the complaint . . . where the document's authenticity is not in dispute"); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (when a court takes judicial notice of documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein").

substantive claims seek an unspecified amount of monetary damages." Docket No. 12 at 3. Because the forum-selection clause provides that the "exclusive jurisdiction for all monetary damage claims arising out of the Agreement" is in the federal and state courts of Delaware, defendant argues that this Court does not have jurisdiction to hear any of plaintiff's substantive claims. *Id.*

Plaintiff argues that the forum-selection clause in Section 10(a) is permissive and that plaintiff's tort claims for defamation and intentional interference with prospective economic relations do not arise from the Agreement and therefore fall outside of the forum-selection clause. Docket No. 17 at 4–9.

The Court must first consider which state's law applies in this dispute. Federal courts sitting in diversity jurisdiction apply the choice of law rules of their forum states. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Colorado follows the Restatement (Second) of Conflict of Laws (1971) for contract actions. *See Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014) (citing *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (1979)). The Restatement directs the Court to consider any choice-of-law provision in the contract. Restatement § 187. Colorado courts, consistent with the Restatement, "apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern." *Target Corp. v. Prestige Maintenance USA, Ltd.*, 351 P.3d 493, 497 (Colo. App. 2013). As noted previously, the Agreement contains a choice-of-law provision that states, "[t]his Agreement will be governed by the laws of the

6

State of Delaware without regard for conflicts of laws principles." Docket No. 1-1 at 8. However, the parties' briefs cite only Colorado law. The Tenth Circuit has held that parties may waive choice-of-law provisions by failing to adequately brief them. For instance, in *SDJ Ins. Agency, L.L.C. v. Am. Nat. Ins. Co.*, 292 F.3d 689, 692 (10th Cir. 2002), the court noted that, although it would have normally applied Missouri law to the parties' dispute consistent with the contract's choice-of-law provision, because neither party argued that Missouri law applied, the court found the issue waived and applied Colorado law instead. *See also Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1212 (10th Cir. 2001) (holding that weak protest against application of Texas law amounted to waiver of argument that Nebraska law should apply). As in *SDJ Insurance Agency* and *Mauldin*, the Court finds that the parties' reliance on Colorado law indicates that the parties do not intend for Delaware law to apply. The Court will therefore apply Colorado law.

      A mandatory forum-selection clause is presumed valid "unless the party challenging it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (internal quotation marks and bracket omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). A forum-selection clause is mandatory if it "contain[s] clear language showing that jurisdiction is appropriate only in the designated forum." *K&V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002) (quoting *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)). A forum-

selection clause is permissive if it "authorize[s] jurisdiction in a designated form but do[es] not prohibit litigation elsewhere." *Id.* (quoting *Excell*, 106 F.3d at 321). The Court will, therefore, begin its analysis with whether the forum-selection clause in this case is mandatory or permissive and then will turn to whether the clause is valid.

The Court does not find convincing defendant's argument that the forum-selection clause is mandatory and that the exclusive jurisdiction for all monetary damages claims is in Delaware. Docket No. 12 at 3–4. Defendant appears to rely on the word "exclusive" in the forum-selection clause, which states, in part, "I hereby expressly and irrevocably consent to the exclusive personal jurisdiction of the state and federal courts located in Wilmington, Delaware." *See* Docket No. 1-1 at 8. Many courts have construed similar phrases consenting to the exclusive personal jurisdiction of a particular state and have interpreted such language to be a party's consent to jurisdiction in one forum. *See, e.g.*, *K&V Scientific*, 314 F.3d at 498–501 (collecting cases).

However, defendant overlooks the rest of the sentence that begins, "I hereby expressly and irrevocably consent to the exclusive personal jurisdiction of the state and federal courts located in Wilmington, Delaware," but continues, "for any lawsuit *filed there* against me by the Company arising from or relating to this Agreement." Docket No. 1-1 at 8 (emphasis added). The exclusivity of filing a lawsuit relating to the agreement in Delaware courts, therefore, is limited to lawsuits filed by plaintiff. Because this lawsuit was not filed by plaintiff in Delaware, the forum-selection clause in Section 10(a) is not mandatory. *See Excell*, 106 F.3d at 321 ("Mandatory forum

selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." (quotation and alteration omitted)).

Defendant highlights the remainder of Section 10(a), which continues, "except that I recognize the Company reserves the right to seek preliminary or injunctive relief (such as a temporary restraining order or preliminary injunction) in any jurisdiction in which I live or work at the time of a breach or threatened breach of this Agreement." Docket No. 1-1 at 8. Defendant argues that, through this phrase, the parties "made it clear [that plaintiff's] ability to file an action against [defendant] in any other jurisdiction was limited to obtaining injunctive relief." Docket No. 12 at 4. The Court does not agree that the language regarding injunctive relief necessarily means that all other claims must be brought in Delaware. If the Court were to read the forum-selection clause as defendant argues, the clause would require that monetary claims arising from the Agreement must be brought in Delaware, but injunctive claims may be brought anywhere. Such a reading, however, would render meaningless the phrase "for any lawsuit filed there." The Court must give meaning to every word and provision of the Agreement. *United States v. Collins*, 859 F.3d 1207, 1220–21 (10th Cir. 2017) ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)).

The forum-selection clause here is similar to the clause considered in *PTS Data*

*Center Soln's, Inc. v. RF Code, Inc.*, which clause began with a broadly-worded provision that "'any matter arising out of or relating to' the [non-disclosure agreement] must be heard in a Texas court" and then, as here, continued with a "much narrower carve-out that only applies to a claim for equitable relief." 2015 WL 733643, at *3 (D.N.J. Feb. 19, 2015). The narrower carve-out stated that "a claim for equitable relief arising out of or related to this Agreement may be brought in any court of competent jurisdiction." *Id.*, *1. The court explained that other courts interpreting similar provisions have concluded, after harmonizing the agreement as a whole, that the "purpose of the carve-out was to allow the parties to seek preliminary injunctive relief in order to maintain the status quo" during litigation. *Id.* at *3; *see also Nexteer Auto Corp. v. Korea Delphi Auto. Sys. Corp.*, 2014 WL 562264, at *12 (E.D. Mich. Feb. 13, 2014); *Gen. Elec. Cap. Corp. v. Metz Fam. Enterprises, LLC*, 422, 61 A.3d 1154, 1160 (Conn. App. 2013) (interpreting an equitable relief carve-out in a forum-selection clause and finding "[w]hen read in its entirety, the clear purpose of the forum selection provision is to permit [the plaintiff] to 'follow the money' . . . [and, among other things,] seek an order of attachment in [any state of competent jurisdiction] to maintain the status quo pending litigation"). The Court reaches a similar conclusion in this case. The carve-out, that the "Company reserves the right to seek preliminary or injunctive relief (such as a temporary restraining order or preliminary injunction) in any jurisdiction in which I live or work at the time of a breach or threatened breach of this Agreement," Docket No. 1-1 at 8, simply allows plaintiff to seek an injunction to maintain the status quo during litigation.

Giving effect to every word of the Agreement and reading the Agreement as a

whole, the Court finds that plaintiff's interpretation of the Agreement, which is that the forum-selection clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, is correct. Based on plaintiff's interpretation, the phrase "I hereby expressly and irrevocably consent to the exclusive personal jurisdiction of the state and federal courts located in Wilmington, Delaware for any lawsuit filed there against me by the Company arising from or relating to this Agreement" means that, if plaintiff chooses to bring a lawsuit in Delaware, then defendant agrees to personal jurisdiction there.  *See* Docket No. 17 at 7–8.  In other words, a defendant sued in Delaware could not, by virtue of the forum-selection clause, move to dismiss the complaint for lack of personal jurisdiction.  The next phrase, "I recognize the Company reserves the right to seek preliminary or injunctive relief (such as a temporary restraining order or preliminary injunction) in any jurisdiction in which I live or work at the time of a breach or threatened breach of this Agreement," Docket No. 1-1 at 8, means plaintiff can seek an injunction anywhere the defendant lives or works.  Contrary to defendant's argument, the phrase regarding injunctive relief does not limit plaintiff's "ability to file an action against [defendant] in any other jurisdiction" to a claim for injunctive relief, as there is no exclusive language creating such a limitation.  Moreover, it would be reasonable for a company to include a phrase permitting it to seek injunctive relief in the defendant's home jurisdiction, given the not uncommon urgency of enforcing non-competition and trade secret agreements.  Because the Court finds that the forum-selection clause is permissive, the Court will deny the motion to dismiss on that ground.

### B. Amount in Controversy

Defendant argues that the complaint does not provide any support for plaintiff to meet its burden of demonstrating that has satisfied the $75,000 amount-in-controversy requirement for diversity jurisdiction. Docket No. 12 at 4.

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). As a result, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 276 (1977), and the plaintiff does not need to support an amount-in-controversy requirement with evidence. *See McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008). However, if an opponent of federal jurisdiction challenges the amount-in-controversy, then the proponent cannot rest on allegations alone. In that case, when material factual allegations are contested,

> a proponent of federal jurisdiction must . . . prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is "legally certain" that the recovery . . . will be less than the jurisdictional floor may the case be dismissed.

*McPhail*, 529 F.3d at 955 (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)); *see also Adams v. Reliance Std. Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000) ("[T]o justify dismissal," "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount. The burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the

jurisdictional amount.").

The complaint states, "[t]he amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000," and "[p]laintiff seeks injunctive relief to protect its goodwill, the value of which exceeds $75,000." Docket No. 1 at 2, ¶ 9. Plaintiff also alleges that defendant's conduct "ha[s] resulted in actual damages to [plaintiff] in an amount to be proven at trial." *Id.* at 8–11, 13, ¶¶ 40, 48, 58, 66, 76.[3] Defendant contests these allegations and argues that plaintiff has not established that $75,000 worth of "economic loss . . . has been incurred or is threatened," and defendant states that "[t]here is not a mention of a single disrupted relationship or lost opportunity," "loss of revenue," "lost candidates," "lost opportunities." Docket No. 12 at 4–5.

Plaintiff argues that it is defendant's burden "to prove to a 'legal certainty' that the amount recoverable does not meet the jurisdictional threshold" and that defendant has not met this burden. Docket No. 17 at 5. Plaintiff, however, is mistaken. Because plaintiff's amount-in-controversy allegations have been contested, plaintiff, as "the party asserting jurisdiction," must show that "it is not a legal certainty that the claim is less than the jurisdictional amount." *See Adams*, 225 F.3d at 1183; *Chen v. Dillard Store Services, Inc.*, 579 F. App'x 618, 620–21 (10th Cir. 2014) (unpublished) ("Dillard's, as the party asserting federal jurisdiction, must prove, by a preponderance of the evidence, facts sufficient to establish that the amount in controversy may exceed $75,000. . . .

---

[3] Plaintiff also cites to its prayer for relief. Docket No. 17 at 6 (citing Docket No. 1 at 17). "An open-ended prayer for recovery, however, is not an allegation that diversity jurisdiction exists or that the amount in controversy exceeds" the jurisdictional threshold. *Adams*, 225 F.3d at 1182.

Once it is shown that the amount in controversy may be greater than $75,000, the case belongs in federal court unless it is legally certain that less than $75,000 is at stake". (quotation omitted)); *see also* 14AA *Fed. Prac. & Proc. Juris.* § 3702.2 (4th ed. 2021) ("the party seeking to invoke the subject matter jurisdiction of the federal courts, either as an original action or by way of removal, has the burden of proving its existence"). The proponent of jurisdiction may meet its burden with interrogatories, affidavits, calculation from the complaint's allegations, reference to informal estimates or settlement demands, or other evidence. *See McPhail*, 529 F.3d at 956.

Plaintiff, however, provides no evidence that could support its claim that its damages exceed $75,000. Plaintiff states only that defendant's conduct has "effectively damag[ed] [plaintiff's] integrity and reputational value that it has worked hard to foster over the years." Docket No. 17 at 7 n.1. Plaintiff continues, "[e]njoining [defendant] from continuing to falsely attack [plaintiff's] reputation is invaluable." *Id.* Plaintiff provides no support for these assertions. Federal jurisdiction requires the proponent of jurisdiction to "prove, by a preponderance of the evidence, facts sufficient to establish that the amount in controversy may exceed $75,000," *Chen*, 579 F. App'x at 620, and that "it is not a legal certainty that the claim is less than the jurisdictional amount." *Adams*, 225 F.3d at 1183. Because plaintiff has not met its burden, plaintiff has not shown that the Court has subject matter jurisdiction. The Court, therefore, will grant defendant's motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED that Defendant's Motion to Dismiss Complaint [Docket No. 12] is **GRANTED in part** and **DENIED in part**. It is further

ORDERED that plaintiff's claims against defendant are **DISMISSED without prejudice**. It is further

ORDERED that this case is closed.

DATED January 31, 2022.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge